IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-45-D

A.R., by and through her mother, D.R., )
)
                             Plaintiffs, )
)
               v. )       **ORDER**
)
WAKE COUNTY BOARD OF )
EDUCATION, )
)
                             Defendant. )

On January 27, 2022, A.R.,[1] by and through her mother, D.R., (collectively "plaintiffs") filed a complaint in this court alleging a violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681, et seq. and a state tort claim of negligent infliction of emotional distress against the Wake County Board of Education ("Board" or "defendant"). See Compl. [D.E. 2]. On March 14, 2022, the Board moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted [D.E. 14] and filed a memorandum in support [D.E. 15]. On March 31, 2022, plaintiffs responded in opposition [D.E. 17]. On May 14, 2022, the Board replied [D.E. 18]. As explained below, the court grants the Board's motion in part, dismisses plaintiffs' Title IX claim with prejudice, declines to exercise supplemental jurisdiction over the state law claim, and dismisses without prejudice the state law claim.

I.

A.R. is a 10 year-old female student who was enrolled at Wilburn Elementary School. See Compl. ¶¶ 5, 8. On November 3, 2021, a male student, Justin Doe ("J.D."),[2] allegedly assaulted A.R. at school. See id. at ¶ 9. J.D., who allegedly has a history of targeting girls in his grade, attacked

---

[1] The court granted the request by D.R. and A.R. to use pseudonyms in this litigation in order to protect their privacy. See [D.E. 10].

[2] "Justin Doe" is a pseudonym used to protect the privacy of a minor.

A.R. after she was blamed for splashing J.D. with soapy water in the bathroom. See id. at ¶¶ 11–12. After leaving the bathroom, J.D. began insulting and hitting A.R. See id. at ¶¶ 13–14. When the students returned to their classroom, A.R. attempted to report J.D. to a substitute teacher, but the teacher was busy and told A.R. to wait. See id. at ¶ 16.

J.D. continued to strike A.R., and, eventually, A.R. struck him back. See id. at ¶¶ 17–18. In response, J.D. began to strangle A.R., and A.R. fell to the floor. See id. at ¶ 19. When A.R. attempted to sit back down in her seat, J.D. grabbed her, threw her into walls and furniture, and kicked her in the buttocks when A.R. fell to the floor. See id. at ¶¶ 20–26. The substitute teacher failed to intervene, but A.R.'s home room teacher arrived and escorted A.R. to the school's guidance counselor. See id. at ¶¶ 25–29. Although J.D. injured A.R., the school did not provide A.R. medical treatment for over two hours while A.R. waited to meet with the guidance counselor. See id. at ¶¶ 28–31. Eventually, the school contacted D.R. Id. at ¶ 32. D.R. retrieved A.R. and reported the assault to the Raleigh Police Department. See id. at ¶¶ 32–35.

On November 4, 2021, A.R.'s pediatrician diagnosed A.R. with a concussion, muscle strain, and a contusion on her left forehead. See id. at ¶ 37. The pediatrician referred A.R. to the UNC Beacon Program for child abuse and assault. See id. at ¶ 40.

On November 5, 2021, A.R. suffered a panic attack while taking a bath at home, and D.R. took A.R. to the emergency room. See id. at ¶ 45. A.R. continues to suffer physical and emotional symptoms concerning the assault and has sought treatment from a therapist. See id. at ¶¶ 47, 54–55. A.R. also did not have access to her school for several months while recovering from the assault. See id. at ¶ 54. Eventually, A.R. enrolled in another school and resumed classes. See id. at ¶ 52.

II.

The Board contends that D.R. cannot bring this action on behalf of A.R.; therefore, the court should dismiss the complaint under Rule 12(b)(1). See [D.E. 15] 5–6;[D.E. 18] 1–2. A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or

2

constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005); Sasso v. Tesla, Inc., 584 F. Supp. 3d 60, 68 (E.D.N.C. 2022); Lobacz v. United States, No. 5:19-CV-453, 2022 WL 821160, at *1 (E.D.N.C. Mar. 17, 2022) (unpublished). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., White Tail Park, Inc. v. Stroube, 413 F.3d 451, 479 (4th Cir. 2005); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

The Board argues that under Federal Rule of Civil Procedure 17, a court evaluates the law of the state in which the individual is domiciled or in which the district court is located in order to determine capacity and standing to sue. See Fed. R. Civ. P. 17(b)(3). In North Carolina, in any proceeding in which a plaintiff is a minor, "[the minor] must appear by general or testamentary guardian . . . or if there is no such known guardian, then such persons may appear by guardian ad litem." N.C. R. Civ. P. 17(b)(1). The United States Court of Appeals for the Fourth Circuit recognized the "special concern" for the "important and valuable rights" at stake under Rule 17(b)(1) and stated that "even the parent or other natural guardian of the infant cannot step forward as self appointed guardian [a]d litem [as a matter of course under Rule 17(b)(1)], nor will the courts [in

3

North Carolina] make such appointment in a perfunctory manner." Genesco, Inc. v. Cone Mills Corp., 604 F.2d 281, 286 (4th Cir. 1979); see J.W. v. Johnston Cnty. Bd. of Educ., No. 5:11-CV-707, 2012 WL 4425439, at *6 (E.D.N.C. Sept. 24, 2012) (unpublished). Given these cases, the Board argues that D.R. cannot bring this action on behalf of A.R.

Plaintiffs respond that D.R. can bring this action on behalf of A.R. under Rule 17(c)(1)(a). See [D.E. 17] 5–7; Fed. R. Civ. P. 17(c)(1)(a). Under Local Civil Rule 17.1(a), representation of a minor in a civil action "shall be in accordance with Fed. R. Civ. P. 17(c)." Federal Rule 17(c)(1) provides that certain specified representatives may sue on behalf of a minor, or if the minor "does not have a duly appointed representative, [the minor] may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2). D.R., as a parent, "qualifies as a general guardian who may act on behalf of a minor without needing a formal court appointment under Federal Rule 17(c)." Epic Games, Inc. v. C.B., No. 5:19-CV-250, 2019 WL 8334611, at *1 (E.D.N.C. Sept. 27, 2019) (unpublished) (quotations omitted).

The parties' arguments reflect a disagreement among federal district courts sitting in North Carolina about Genesco. The Board reads Genesco to suggest that federal courts sitting in North Carolina must apply North Carolina law under Federal Rule 17(b) when determining whether a mother can bring suit for her minor child and cites some district court opinions that arguably support that position. See J.W., 2012 WL 4425439 at *6 (citations omitted); Verbal v. Krueger, No. 1:09-CV-990, 2010 WL 276644, at *3 n.4 (M.D.N.C. Jan. 15, 2010) (unpublished); Cooper v. Brunswick Cnty. Sheriff's Dep't, No. 7:10-CV-00014, 2011 WL 738610, at *3–4 (E.D.N.C. Feb. 7, 2011) (unpublished), report and recommendation adopted, No. 7:10-CV-14, 2011 WL 736670 (E.D.N.C. Feb. 23, 2011) (unpublished). Other district courts reason that "Rule 17(b) looks to state law to determine who has the capacity to sue on their own behalf, while Rule 17(c) creates a federal procedural rule to determine who may serve as a representative for a person lacking such capacity." Kline v. Cleveland Cnty., No. 119-CV-00197, 2020 WL 1692348, at *5 (W.D.N.C. Apr. 7, 2020)

4

(unpublished) (emphasis omitted); see Epic Games, 2019 WL 8334611 at *1; Seibels, Bruce & Co. v. Nicke, 168 F.R.D. 542, 543 (M.D.N.C. 1996) ("[Rule 17(c)] provisions permit, but do not compel, a court to appoint a guardian ad litem for an unrepresented minor."). Several federal circuits have reached the same, or similar, conclusion concerning Rule 17(c). See Graham v. Teller Cty., 632 F. App'x 461, 465 (10th Cir. 2015); Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 135–36 (3d Cir. 2002) (holding that a district court "need not look to the state law" when exercising its authority under Rule 17(c)); Thomas v. Humfield, 916 F.2d 1032, 1035 (5th Cir. 1990); see also Lisa V. Martin, No Right to Counsel, No Access Without: The Poor Child's Unconstitutional Catch-22, 71 FLA. L. REV. 831, 838–39 (2019) (noting that Rule 17(c) "authorizes general guardians, committees, and conservators to sue and defend on behalf of children . . . participation of a qualifying adult on behalf of a child in legal proceedings cures the child's incapacity and permits the case to proceed [in federal court]").

The parties' disagreement concerns how Genesco applies. In Genesco, a parent of a minor filed an action in the United States District Court for the Northern District of West Virginia on behalf of her child without any formal procedure naming the parent as a representative. Genesco, 604 F.2d at 285–86. In Genesco, the Fourth Circuit addressed whether North Carolina law would consider the statute of limitations to run when the minor's parent filed suit in the Northern District of West Virginia. Id. at 287. The Fourth Circuit analyzed North Carolina procedural law and concluded that "the North Carolina statute of limitations runs against an infant when he has a legal guardian who is charged with the duty of bringing suit on his behalf." Id. at 286. Nonetheless, the Fourth Circuit concluded that the North Carolina statute of limitation did not begin to run against the minor when the mother filed suit because the mother was not charged under North Carolina law to file suit. Id. Moreover, in Genesco the Fourth Circuit observed that Federal Rule of Civil Procedure 17(c) contains "no special appointment process" to chose a representative for a minor. See id. at 285. In Genesco, the Fourth Circuit examined what North Carolina procedural law requires to trigger a

5

statute of limitations, but Genesco does not require a court to use North Carolina procedural law under federal Rule 17(b) to override the provisions of federal Rule 17(c).

The court examines Rule 17(b) to determine whether A.R. has capacity to sue under North Carolina law and then to Rule 17(c) to determine whether D.R. may bring this suit on behalf of her daughter. Under North Carolina law, A.R. lacks capacity to sue. See Fed. R. Civ. P. 17(b)(3); N.C. R. Civ. P. 17(b)(1). D.R., as A.R.'s mother, however, may bring suit on A.R.'s behalf in federal court under Rule 17(c). See Fed. R. Civ. P. 17(c)(1)(a); Kline, 2020 WL 1692348 at *5; Epic Games, 2019 WL 8334611 at *1; Seibels, 168 F.R.D. at 543. Thus, D.R. can bring suit in this case, and the court denies the Board's motion to dismiss under Rule 12(b)(1).

III.

The Board moves to dismiss the complaint under Rule 12(b)(6). See [D.E. 15] 6–10;[D.E. 18] 2–6. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [her] claims," Twombly,

6

550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678-79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In order to state a claim under Title IX for conduct stemming from student-on-student harassment, a plaintiff must demonstrate that: (1) she was a student at an educational institution receiving federal funds; (2) she was subjected to discrimination or harassment based on her sex; (3) the discrimination or harassment was sufficiently severe or pervasive to create a hostile environment in an educational program or activity; and (4) there is some basis for imputing liability to the educational institution. See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 652 (1999); Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007) (en banc); McClean v. Duke Univ., 376 F. Supp. 3d 585, 598 (M.D.N.C. 2019); Doe v. Salisbury Univ., 107 F. Supp. 3d 481, 764 (D. Md. 2015). At this stage, the parties disagree about whether (1) plaintiffs plausibly allege that A.R. was subjected to discrimination or harassment based on her sex and (2) whether there is some basis for imputing liability to the Board.

The Board argues that plaintiffs have failed to allege facts "supporting an inference that [J.D.'s] alleged harassment was based on [A.R.'s] sex." [D.E. 15] 6. Plaintiffs disagree and cite J.D.'s alleged targeting of other girls before assaulting A.R. and note that J.D. allegedly called A.R.

7

gender-based insults (such as "bitch") during the alleged assault. See Compl. ¶¶ 11, 24; [D.E. 17] 8–11.

In Webster v. Chesterfield Count School Board, 38 F.4th 404 (4th Cir. 2022), a teacher was subjected to consistent unwanted touching on her chest and crotch area by a student, named "S.M."[3] S.M. was diagnosed with Down's Syndrome and Attention Deficit Hyperactivity Disorder ("ADHD"). Id. at 407–08. The Fourth Circuit held that "conduct is because of sex" when "the behavior, considering the underlying circumstances and the setting in which it occurred" functions to subject members of one sex to "disadvantageous terms or conditions . . . to which members of the other sex are not exposed." Id. at 413 (cleaned up). The Fourth Circuit concluded that S.M.'s contact with the teacher "fell within the range of behaviors which . . . were unsurprising for a child of his age with Down's Syndrome and ADHD," and that this contact was not based-on the teacher's sex Id.

Plaintiffs have not plausibly alleged that A.R. was subject to conditions to which her male peers were not exposed based upon the circumstances of the alleged assault. Id. In opposition, plaintiffs assert that the fact another student was in the bathroom at the time of the soap splashing demonstrates that the attack was about A.R.'s sex. See [D.E. 17] 9. This argument, however, contradicts plaintiffs' assertion that J.D. began the attack "believing A.R. was responsible for splashing soap on him." Compl. ¶ 12. By definition, an attack based on a soap splash is not an attack based on sex.

Next, plaintiffs argue that, because J.D. was older and larger than the other students and because he targeted A.R. and other girls, these facts plausibly suggest sex-based animus. [D.E. 17] 9. A.R., however, did not assert that J.D. exclusively targeted girls or that J.D. was small compared to the boys and only had physical advantages over the girls, only that J.D. had a general size

---

[3] Although Webster concerns a Title VII claim, the requirement in Title VII and Title IX that the harassment be based on sex is the same. See Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e), et seq.; Title IX, 20 U.S.C. §§ 1681, et seq.

8

advantage over everyone. Moreover, J.D. calling A.R. a "bitch" during the incident does not transform this incident into a sex-based attack. See Davis, 526 U.S. at 652; HB v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-5881, 2012 WL 4477552, at *17 (S.D.N.Y. Sept. 27, 2012) (unpublished) (noting that "bitch" has become an "all-purpose insult" among students and thus by itself does not suggest sex-based animus). Finally, plaintiffs' conclusory assertion that "the bullying A.R. experienced constitutes sexual harassment" and the conclusory statement that J.R.'s actions were "sex based" do not plausibly support an inference of sexual harassment. Compl. ¶¶ 61, 71, 77, 78; see Iqbal, 556 U.S. at 678. Even viewing the complaint in the light most favorable to plaintiffs, plaintiffs have failed to plausibly allege that A.R. was subject to sex-based discrimination or harassment. Thus, plaintiffs' Title IX claim fails.[4]

Plaintiffs did not request leave to amend their Title IX claim and did not amend the Title IX claim in response to the Board's motion to dismiss. Thus, the court dismisses with prejudice the Title IX claim because plaintiffs apparently have alleged all the facts that they have concerning the Title IX claim.

IV.

Because the court dismisses the Title IX claim, the court next considers whether to exercise supplemental jurisdiction over the remaining state-law claim. A court may decline to exercise supplemental jurisdiction over a state-law claim when (1) "the claim raises a novel or complex issue of State law;" (2) "the claim substantially predominates over" the federal claim or claims; (3) the court has "dismissed all claims over which it has original jurisdiction;" or (4) other "exceptional circumstances" present "compelling reasons for declining jurisdiction." 28 U.S.C. §§ 1367(c)(1)–(4). Additionally, the court may decline to exercise supplemental jurisdiction when "values of economy, convenience, fairness, and comity" make the court's retaining jurisdiction over

---

[4] Because the court concludes that plaintiffs have failed to plausibly allege sex-based harassment, the court does not reach the Board's argument regarding imputing liability. See Doe v. Fairfax Cnty. Sch. Bd., 1 F.4th 257, 263 (4th Cir. 2021).

9

the claims inappropriate. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351(1988); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir.2001); Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir.1995).

Eliminating all federal claims before trial generally suffices to decline supplemental jurisdiction over pendent state-law claims. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7; see Shanaghan, 58 F.3d at 110 ("Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."); see also Walsh v. Mitchell, 427 Fed. App'x 282, 283 (4th Cir. 2011) (per curiam) (unpublished); Root v. Cnty. of Fairfax, 371 Fed. App'x 432, 435 (4th Cir. 2010) (per curiam) (unpublished). Moreover, the questions of governmental immunity and standing doctrine under North Carolina law concerning plaintiffs' remaining claim are better addressed by the North Carolina courts. Therefore, the court declines to exercise supplemental jurisdiction over the remaining state-law claim.

V.

In sum, the court GRANTS IN PART defendant's motion to dismiss [D.E. 14] and DISMISSES WITH PREJUDICE plaintiffs' Title IX claim. The court DECLINES to exercise supplemental jurisdiction over plaintiffs' remaining state-law claim and DISMISSES WITHOUT PREJUDICE the state-law claim to allow plaintiffs the opportunity to refile their state-law claim in the Superior Court of North Carolina if desired.

SO ORDERED. This 15 day of November, 2022.

JAMES C. DEVER III
United States District Judge